UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

WAYNE ROSE,

                Plaintiff,

        - Against –

ROBERT GOLDMAN; WILLIAM FORD;
JUDE OKORA; COLLEEN WALSH; EVELYN
SANTIAGO; CHRISTOPHER STANECKI;
ANTHONY CASALE, JR.; CHRISTOPHER
KAZLAU; DAVID BETHEL; SYLVIA WAY;
THE CITY OF NEW YORK; and THE STATE
OF NEW JERSEY,

                Defendants.

-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**02 CV 5370 (NGG) (LB)**

**BLOOM, United States Magistrate Judge:**

        Plaintiff, Wayne Rose, brings this *pro se* action against the City of New York and New

York City Probation Officers Robert Goldman, David Bethel, and Sylvia Way ("City

Defendants"); the State of New Jersey and New Jersey Probation Officers Anthony Casale, Jr.,

Christopher Stanecki, Colleen Walsh, Jude Okoro, and Evelyn Santiago ("New Jersey

Defendants"); New Jersey Public Defender Christopher Kazlau;[1] and William Ford, a licensed

Certified Social Worker. Plaintiff alleges that defendants violated his rights under 42 U.S.C. §§

1983, 1985, 1986, 1987, 1988, and 14141, and the First, Fourth, and Fourteenth Amendments to

the United States Constitution. Plaintiff also asserts a malpractice claim against Ford. Defendants

---

[1] The record does not reflect that defendant Kazlau was properly served in this action. Plaintiff submits a certified mail receipt listing Kazlau's address and signed "Byrone B," but states that he "has not received the return receipt from . . . Kazlau." Document 7. The time to serve under Fed. R. Civ. P. 4(m) has long since passed. Even if Kazlau had been properly served within the prescribed period, he should be dismissed from this action because public defenders are not "state actors" under 42 U.S.C. § 1983. See Polk County v. Dodson, 454 U.S. 312, 325 (1981).

1

move for summary judgment pursuant to Fed. R. Civ. P. 56.[2] The Honorable Nicholas G. Garaufis referred defendants' motions to me for a consolidated Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, defendants' motions should be granted and the case should be dismissed.

## BACKGROUND

The following facts are not in dispute unless otherwise stated.[3]

### I.   Factual History

On November 23, 1998, plaintiff Wayne Rose was arrested in New Jersey on charges of child abuse in the 4th degree. N.Y. Ex. I. The Adult Presentence Report reflects that plaintiff was accused of furnishing drugs and alcohol to minors and allowing them to view pornography on his computer. Id. Plaintiff admits that children were smoking marijuana in his house, but denies that he allowed them to view pornography. Pl. Dep. at 61.

On April 16, 1999, the Honorable Camille M. Kenny, New Jersey Superior Court, Hudson County, sentenced plaintiff to five years probation after he pled guilty to one count of Child Abuse, N.J. Stat. Ann. § 9:6-3. N.Y. Ex. J. The Judgment of Conviction, signed by Judge

---

[2] Defendants provided plaintiff with the requisite notice under Local Civil Rule 56.2. Documents 150, 152, 155.

[3] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56:1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). The City Defendants, New Jersey Defendants, and Ford have each submitted statements of undisputed material facts, Documents 150, 152, 155, and plaintiff filed three corresponding counter-statements under 56.1(b). Documents 177-179. The Court may not rely solely on the Rule 56.1 statements of undisputed facts: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, only those facts in the parties' Rule 56.1 statements that are supported by admissible evidence and not controverted by the record are deemed admitted.

Kenny, prescribes: "Probation for a period of five (5) years. Defendant is to submit to random urine monitoring, avoid contact with children and must not get involved in programs regarding children." Id. Judge Kenny also issued an Order for Mental Health Assessment directing "[Rose] to be examined by a mental health screener."[4] N.Y. Ex. L.

Plaintiff was subsequently referred to the New Jersey Department of Probation. The New Jersey Court's referral form lists random urine monitoring, no involvement in mentoring young people, and mental health assessment, as special conditions of plaintiff's probation. N.Y. Ex. K. Plaintiff reported to New Jersey Probation Officer Jude Okoro and signed a copy of the State of New Jersey Standard Conditions of Adult Probation. See N.Y. Ex. M. The standard conditions require, among other things, "cooperat[ion] in any medical and/or psychological examinations, tests and/or counseling your probation officer recommends," and the special conditions require "court ordered treatment program, mental health counseling," "random urine monitoring," and "no involvement in mentoring young people." Id.

About two months after his conviction, plaintiff moved from New Jersey to New York. Pl. Dep. at 72. The supervision of plaintiff's probation was transferred to the New York City Department of Probation, and Robert Goldman was assigned as plaintiff's New York City Probation Officer. See N.Y. Ex. Q; N.J. 56.1 St. ¶¶ 9-10. Goldman directed plaintiff to undergo a mental health examination at Bellevue Hospital. N.Y. 56.1 St. ¶ 33. On May 16, 2000, Dr. Myles Schneider examined plaintiff and diagnosed him with substance abuse and antisocial personality traits, and noted that plaintiff "does not wish counseling." N.J. Ex. I.

---

[4] Plaintiff did not appear at the court-ordered mental health assessment scheduled on April 28, 1999. N.Y. Ex. O.

Goldman subsequently referred plaintiff to Mustard Seed Forensic Social Work Services, P.C. ("Mustard Seed"), a private company that specializes in the assessment and treatment of adult and adolescent sexual offenders. Ford 56.1 St. ¶¶ 3, 4. On June 15, 2000, plaintiff met with William Ford, a licensed Certified Social Worker, for approximately forty-five minutes. Id. ¶ 5. Plaintiff testified that he told Ford that he could not afford therapy and would not attend sex offender counseling, and that "Ford advised me that everybody pays, that I'll pay, he told me to get out." Pl. Dep. at 245-247. Ford sent Goldman a "Letter of Termination," which states,

> Mr. Rose was seen by our agency due to his involvement in deviant sexual behavior. He denies the charges brought against him. Additionally he states that he is unable to pay for services and if he is made to attend treatment he will be unable to do so because he has just filed for bankruptcy. Therefore it appears at this time that we will be unable to provide services for Mr. Rose.

N.Y. Ex. T.

By letter dated June 19, 2000, Goldman informed Okoro that Rose vacated his apartment without notifying probation. N.Y. Ex. II. Plaintiff maintains that he notified Goldman that he vacated his apartment by cell phone. Pl. 56.1(b) N.Y. Response ¶ 36. Thereafter, Goldman notified New Jersey Probation that plaintiff was not in compliance with his probation. Goldman Dep. at 29. Consequently, on July 19, 2000, Okoro filed a Violation of Probation ("VOP") charging plaintiff with failure to report to the New York Probation Department, moving without providing a current address, failing to pay court-ordered fees, and failing to report for urine monitoring. N.Y. Ex. U. Prior to the court hearing on the violation, Goldman contacted Okoro and clarified that plaintiff had reported to probation as directed and submitted to urine monitoring, but that he had not entered mental health counseling as directed. N.Y. Ex. S.

On September 15, 2000, Judge Kenny held a hearing on the VOP, and plaintiff appeared with counsel, Christopher Kazlau. N.J. Ex. K. At the hearing, Okoro withdrew all charges except

that plaintiff had failed to attend counseling. Id. at 2-3. Judge Kenny did not rule on the VOP. Instead, she directed Rose to attend counseling as directed by the New York probation officers and scheduled another hearing. Id. at 4, 7. On September 1, 2000, plaintiff began counseling at the Federation Employment and Guidance Service, Inc. ("FEGS"). Pl. Ex. 35. His attendance at FEGS was communicated to Judge Kenny at the hearing on December 15, 2000. N.J. Ex. L. Judge Kenny left the VOP "open" and ordered plaintiff to continue to adhere to the terms of his probation. Id.

On March 12, 2001, Okoro filed a second VOP charging plaintiff with failure to report to a probation officer, pay court-ordered fees, and provide proof of continued counseling as ordered by the Court. N.J. Ex. N. However, by letter dated April 11, 2001, Okoro withdrew the VOP. See N.J. Ex. O; see also N.Y. Ex. W.

On November 27, 2001, plaintiff was discharged from FEGS because of non-compliance with his appointments and his "desire to stop" counseling. N.Y. Ex. X. Plaintiff states that he discontinued counseling because the expense and distance was burdensome and because he was "fine." Pl. Dep. at 91-92. Additionally, on May 14, 2002, plaintiff informed his New York City Probation Officer, David Bethel, that he had successfully completed his mental health treatment at FEGS. N.Y. Ex. Y. On November 19, 2002, plaintiff reported to Bethel and informed him that he had reenrolled at FEGS. Id. Bethel contacted FEGS and learned that plaintiff had made and then cancelled one appointment and had not rescheduled the appointment. Id. Therefore, Bethel, with the signed approval of his supervisor, Sylvia Way, informed New Jersey Probation Officer Evelyn Santiago that plaintiff failed to attend counseling and requested that she file a VOP. N.Y.

5

Ex. EE. On January 9, 2003, plaintiff was served with a VOP hearing summons signed by Santiago and her supervisor Colleen Walsh. N.Y. Ex. FF.[5]

Prior to the VOP hearing, plaintiff re-enrolled at FEGS on May 5, 2003. N.Y. Ex. X. A month later, plaintiff attended the VOP hearing on June 5, 2003, and Judge Mark J. Nelson, J.S.C., found plaintiff in compliance with his probation and dismissed the VOP. N.Y. Ex. HH. On June 18, 2003, plaintiff was discharged from FEGS because he needed "more supervision." N.Y. Ex. X. On April 16, 2004, plaintiff's probation ended. N.Y. 56.1 St. ¶ 62.

## II. Procedural History

On October 4, 2002, plaintiff initiated this *pro se* action alleging that defendants violated his rights under 42 U.S.C. §§ 1983, 1985, and 1986. Plaintiff's claims include harassment, malicious prosecution, false imprisonment, failure to supervise employees, discrimination, and libel.[6] In lieu of an answer, defendants moved to dismiss the complaint.

On March 10, 2004, the Court granted defendants' motions in part and denied them in part. See Document 50. The Court dismissed plaintiff's claims against New Jersey Superior Court Judges Arthur N. D'Italia, Camille M. Kenny, and Lawrence P. Debello, based on absolute judicial immunity. Next, the Court held that the New Jersey Defendants were not entitled to absolute immunity from claims that they knowingly filed false probation violation reports and

---

[5] Prior to the hearing, plaintiff filed an action in the Southern District of New York against David Bethel, Sylvia Way, the City of New York, Evelyn Santiago, and Colleen Walsh alleging many of the same claims that he makes herein as well as claims that defendants retaliated against him for filing this action. See Rose v. Bethel, et al., No. 03 Civ. 1241 (S.D.N.Y. filed February 25, 2003).

[6] Plaintiff's complaint names the following defendants: the Honorable Arthur N. D'Italia, Honorable Camille M. Kenny, Honorable Lawrence P. Debello, Anthony Casale, Christopher Stanecki, Colleen Walsh, Jude Okoro, Evelyn Santiago, Robert Goldman, David Bethel, Sylvia Way, the State of New Jersey, the State of New York, William Ford and Christopher Kazlau. On December 12, 2002, plaintiff stipulated to dismiss all claims against the State of New York. See Document 11.

declined to dismiss the action based on the doctrine of qualified immunity. With respect to plaintiff's claims pursuant to 42 U.S.C. §§ 1985 and 1986, the Court granted plaintiff sixty days to amend his complaint, stating, "[s]hould the plaintiff fail to timely file an amended complaint, the court will, upon motion of Ford, grant Ford's motion to dismiss the §§ 1985 and 1986 claims." The Court dismissed plaintiff's libel claim against Ford.

The New Jersey Defendants moved for reconsideration on the issue of absolute immunity, and plaintiff moved for reconsideration on his libel claim. The Court held that:

> (1) the New Jersey probation officers are absolutely immune from the plaintiff's claims related to treatment by William Ford; (2) the New Jersey probation officers are only entitled to qualified immunity from the plaintiff's claim related to the probation violation for failing to make required monetary payments; (3) the New Jersey probation officers' belated requests for summary judgment and dismissal on the basis of qualified immunity are held in abeyance until discovery is complete; and (4) the plaintiff's libel claim against William Ford is barred by the statute of limitations.

Document 64 at 12.

By Order dated March 30, 2005, the Court dismissed plaintiff's §§ 1985 and 1986 claims against Ford with prejudice for failure to timely file an amended complaint in accordance with the Court's March 10, 2004 Order. Document 90. The Court granted plaintiff's motion to amend his complaint and allowed him to add a malpractice claim against Ford. Id. at 11.

On June 2, 2005, plaintiff filed an amended complaint adding a malpractice claim against Ford and asserting claims pursuant to 42 U.S.C. §§ 1983, 1985, 1986, 1987, 1988, and 14141.

Document 104. Thereafter, the parties conducted discovery. The City Defendants, the New Jersey Defendants, and Ford now move for summary judgment. Plaintiff opposes the motions.[7]

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

---

[7] In his opposition, plaintiff moves to supplement his amended complaint to add a malpractice claim against Goldman and Allen Washington, Ford's partner at Mustard Seed. Pl. Opp. at 16. Plaintiff has already been given the opportunity to replead his malpractice claim. Moreover, there is no basis for plaintiff's claim against Washington. Plaintiff's motion to supplement his amended complaint should therefore be denied. See Wingate v. Gives, et al., No. 05 Civ. 1872, 2009 WL 424359, at *4 (S.D.N.Y. Feb. 13, 2009) (a motion to supplement should be denied based on undue delay, prejudice, bad faith, dilatory motive, or futility).

However, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Niagra, 315 F.3d at 175 (quoting Anderson, 477 U.S. at 252). Here, because plaintiff is proceeding *pro se*, we read his papers "liberally and interpret them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotations omitted).

## DISCUSSION

### I.  Due Process

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Here, plaintiff's complaint arises in large part from the requirement that he attend counseling as a condition of his probation. Plaintiff maintains that the sentencing court never ordered him to attend mental health counseling and that "defendants altered an the [sic] original Order of the Court (Okora) as proof is shown by two NJ state judges, stating on the record that the court never ordered any therapy and/or counseling." Pl. Memo at 1. Plaintiff states that "Goldman had

knowledge that the plaintiff was never ordered any counseling and relied upon a hand written note rather then [sic] the original sentence." Id. at 3.

Plaintiff is correct that the Judgment of Conviction does not include mental health counseling as a condition of his probation. See N.Y. Ex. J; see also N.J. Ex. Q (Judge Nelson stated at the June 5, 2003 VOP hearing, "I looked at the original judgment of conviction in this matter . . . The judge didn't order any counseling. It's not in the judgment of conviction. It is not in the judgment of conviction. At least I didn't see it in there, and I think I can read fairly well."). Nonetheless, Judge Garaufis previously held that "the New Jersey probation officers were not acting in the complete absence of jurisdiction when they prosecuted the probation violation for failing to attend mental health counseling." Document 64 at 7. The Court stated,

> First, at a September 15, 2000 hearing, the New Jersey court stated that "Didn't I order counseling? It doesn't appear on the JOC [Judgment of Conviction]. If probation in New York thinks it's appropriate, I don't disagree." Second, there is some evidence that the court did order the mental health treatment, even if the plaintiff disputes this evidence. Third, there appears to be undisputed evidence that the plaintiff was required to undergo a mental health assessment as a special condition of his probation. Implicit in this order requiring a mental health assessment is some discretionary authority that probation should require the plaintiff to receive further mental health counseling in the event that the assessment indicated that it was appropriate. Fourth, the State of New Jersey "Standard Conditions of Adult Probation" form states that probationers shall cooperate in any medical and/or psychological examinations, tests and/or counseling [the probationer's] probation officer recommends.

Id. at 6-7 (internal citations and quotations omitted). The Court also stated that the Standard Conditions form "is evidence that the court has authorized New Jersey probation officers' to require probationers to receive counseling," and noted that on June 5, 2004, the court ordered plaintiff to continue counseling as recommended by probation. Id. at 7 (internal quotations omitted). Therefore, defendants did not violate plaintiff's rights by requiring that he attend counseling.

10

### a. Sex Offender Counseling

Whether defendants violated plaintiff's constitutional rights by directing him to undergo sex offender counseling is a more difficult question. The Fifth, Ninth, Tenth and Eleventh Circuits have held that prisoners who have not been convicted of a sex offense have a liberty interest in not being classified or treated as a sex offender without due process protections. See Coleman v. Dretke, 395 F.3d 216, 222 (5th Cir. 2004) ("prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions"); Chambers v. Colo. Dep't of Corr., 205 F.3d 1237, 1242 (10th Cir. 2000) (inmate had right to procedural due process before being classified as sex offender); Kirby v. Siegelman, 195 F.3d 1285, 1292 (11th Cir. 1999) (holding the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause); Neal v. Shimoda, 131 F.3d 818, 831 (9th Cir. 1997) (a state must provide a hearing before classifying a prisoner as a sex offender and requiring the prisoner to complete a treatment program as a condition to parole eligibility). Relying on Vitek v. Jones, 445 U.S. 480 (1980), the Courts in Coleman, Chambers, Kirby, and Neal acknowledged the stigmatizing consequences of being labeled a sex offender. See Vitek, 445 U.S. at 494 (the Supreme Court held that "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections.").

By contrast, the Seventh Circuit in Grennier v. Frank, 453 F.3d 442 (7th Cir. 2006) held that a prisoner who had not been convicted of a sex offense did not have a protected liberty interest in being free from sex offender classification. The Court distinguished Coleman,

Chambers, Kirby, and Neal by stating that in those cases, "[i]t was the liberty or property interest stemming from statutes and regulations, and not the "sex offender" label alone, that required the hearing." Grennier, 453 F.3d at 445. Similarly, the Eighth Circuit denied a prisoner's due process claim where he was required to register as a predatory offender even though he was not convicted of a predatory offense. Gunderson v. Hvass, 339 F.3d 639, 644 (8th Cir. 2003). The Court stated that "[d]amage to reputation alone, however, is not sufficient to invoke the procedural protections of the due process clause." Gunderson, 339 F.3d at 644.

The Second Circuit has not addressed this issue, but the district courts have split on the issue. Compare Vega v. Lantz, No. 3:03-cv-2248, 2008 WL 3992651, at *14 (D. Conn. Aug. 25, 2008) ("[b]eing classified in prison as a sex offender not only invokes a constitutionally protected liberty interest but it causes a "stigma-plus"), with Tinsley v. Goord, No. 05 Civ. 3921, 2006 WL 2707324, at *5 (S.D.N.Y. Sept. 20, 2006) (prisoner's classification as a sex offender did not implicate a constitutionally protected liberty interest). Here, the Court need not determine whether defendants violated plaintiff's due process rights by sending him to sex offender counseling because defendants are entitled to qualified immunity on this claim.

### b. Qualified immunity

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity analysis involves two-steps: first, the Court must determine whether the facts alleged make out a violation of a constitutional right; if the plaintiff establishes a

constitutional violation, the Court must then determine whether the conduct alleged violated "clearly established" statutory or constitutional rights of which a reasonable person would have known. Saucier v. Katz, 533 U.S. 194, 201 (2001). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004). The Supreme Court recently held that the sequence of the Saucier two-step analysis is not mandatory, and that "[t]he judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

In this case, plaintiff was sentenced to probation based on a guilty plea to a nonsexual offense. The terms of plaintiff's probation did not require sex offender counseling. Goldman directed plaintiff to Mustard Seed to undergo sex offender therapy with Ford; however, plaintiff only attended one forty-five minute session. It is undisputed that plaintiff's failure to attend counseling as directed resulted in the filing of a VOP charge. However, plaintiff's probation was not revoked as a result of the charge and plaintiff was not required to attend any further sex offender therapy.

Even assuming, *ad arguendo*, that plaintiff's right to due process was violated when he was required to attend a single forty-five minute session of sex offender counseling, this right was not clearly established at the time of the violation. Moreover, it was objectively reasonable for defendants to believe that their actions were lawful. Plaintiff admits that children were smoking marijuana in his house, Pl. Dep. at 61, and although he denies allowing them to view

pornography, he admits that he had been accused of allowing them to view pornography on his home computer. Id. at 119. Goldman testified that

> plaintiff was referred to Mustard Seed for an evaluation to determine whether or not he was appropriate for treatment there based on the presentence report, the conviction of endangering the welfare of a child and the complaint information that was received from Hudson County which included inappropriate contact with minors, pornography shown to minors, drugs and alcohol used in bedrooms with minors.

Goldman Dep. at 16. Likewise, Ford states that Goldman told him that "the plaintiff was being referred for sex offended [sic] treatment." Ford. Dep. at 6. Although plaintiff was not convicted of a sex offense, Goldman's reliance on the presentence report to refer plaintiff to Mustard Seed for an evaluation to determine whether he was appropriate for treatment was objectively reasonable. Likewise, Ford's belief that plaintiff was referred for sex offender treatment was objectively reasonable.

Both Goldman and Ford are entitled to qualified immunity as at the time of the events raised in plaintiff's complaint, the law was not clearly established as to whether a probationer who was not convicted of a sex offense could be required to attend sex offender counseling. Moreover, it was objectively reasonable for Goldman and Ford to believe that their actions were lawful. Accordingly, Goldman and Ford are entitled to qualified immunity and plaintiff's claim that defendants violated his rights when he was sent for sex offender counseling should be dismissed.[8]

---

[8] Plaintiff also alleges that the City Defendants "submitted information to its Board of Examiners of Sex Offenders with knowledge that plaintiff herein is not and has not been a sex offender." Am. Compl. ¶ 51. However, the record reflects that plaintiff was provided with an opportunity to be heard on this issue, and that the Board of Sex Offenders concluded that plaintiff would not have to register as a sex offender. N.Y. Ex. CC. Accordingly, plaintiff was afforded due process and fails to state a claim that the City Defendants violated his constitutional rights.

## II. Malicious Prosecution

Plaintiff alleges that defendants violated his "constitutional rights via malicious prosecutions in that the defendants did initiate and continued to initiate malicious and frivolous probation violations." Am. Compl. ¶ 69. "To prevail on a malicious prosecution claim under § 1983, a plaintiff must show a deprivation of [his] liberty under the Fourth Amendment . . . and establish the elements of a state law malicious prosecution claim." Sheikh v. City of New York, Police Dep't, Nos. 03-CV-6326, 05-CV-4718, 2008 WL 5146645, at *8 (E.D.N.Y. Dec. 5, 2008) (citing Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002)). A plaintiff "must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). A plaintiff must also establish "the existence of a post-arraignment deprivation of liberty rising to the level of a Fourth Amendment violation. Kirk v. Metro. Transp. Auth., No. 99 Civ. 3787, 2001 WL 258605, at *14 (S.D.N.Y. March 14, 2001). Here, plaintiff is unable to establish the elements of a malicious prosecution claim and defendants' motions should be granted.

### a. Defendants Commenced a Criminal Proceeding Against Plaintiff

Defendants brought three VOPs against plaintiff, and plaintiff attended court hearings on two of these violations. Thus, plaintiff has met the first prong of his malicious prosecution claim, that defendants commenced criminal proceedings against him. See Landon v. County of Orange, No. 08-CV-8048, 2009 WL 2191335, at *6 (S.D.N.Y. July 23, 2009) (a VOP proceeding is considered a criminal proceeding). However, the Court previously held that "with respect to

initiating the violation proceeding, the New Jersey probation officers' conduct in making the discretionary decision to prosecute the probation violation falls within the probation officers' absolute prosecutorial immunity." Document 64 at 5-6. Therefore, the New Jersey defendants are absolutely immune from plaintiff's malicious prosecution claim arising from the July 19, 2000 and the January 9, 2003 VOPs.

### b. Proceeding Ended in Plaintiff's Favor

"As a general rule, a final termination of a criminal proceeding in favor of the accused is a favorable termination for the purposes of a subsequent malicious prosecution claim." Rothstein v. Carriere, 373 F.3d 275, 286 (2d Cir. 2004) (plaintiff carries the burden of demonstrating "a final termination that is not inconsistent with innocence."). Here, only the January 9, 2003 VOP expressly terminated in plaintiff's favor. The July 19, 2000 VOP was left "open," and the March 12, 2001 VOP was withdrawn. Although the New Jersey Defendants argue that the March 12, 2001 VOP "was not disposed of in a manner that was indicative of Plaintiff's innocence" since it was withdrawn pursuant to an agreement between plaintiff and Walsh, see N.J. Memo at 15, for purposes of this Report, the Court will assume that all of the VOP proceedings terminated in plaintiff's favor.

### c. Probable Cause for the Proceeding

Probable cause is a "complete defense" to a malicious prosecution claim. See Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). The operative question is not whether plaintiff violated his probation, but whether a reasonable probation officer believed that plaintiff violated his probation. See Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) ("probable

cause is to be assessed on an objective basis."). In this Circuit, probable cause must be established for each charge. Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991).

Here, the various VOP charges against plaintiff included failure to (1) report to probation; (2) report for urine monitoring; (3) provide a current address; (4) attend counseling; and (5) pay court-ordered fees. The record reflects that defendants had probable cause to believe that plaintiff was not attending counseling. Plaintiff admits that he refused counseling at Mustard Seed. He states that he "refused to attend this type of therapy," and that he "would not go to group therapy for sexual misconduct behavior and have this on his record for the rest of his life." Pl. Aff. ¶¶ 50, 74. Plaintiff also admits that he stopped going to FEGS. Pl. Aff. ¶¶ 127, 144. He states that "I have not been in therapy for several months . . . I am presently unable to get back into FEGS because they are booked solid until later February/Early January." Pl. Ex. 49. During plaintiff's deposition, defendants asked:

> **Q:** After Bethel ordered you to go to counseling and before the VOP was issued did you go to any counseling pursuant to Officer Bethel's order?
>
> **A:** I was scheduling counseling, yes.
>
> **Q:** Did you go to counseling?
>
> **A:** No.

Pl. Dep. at 225. The record further reflects that plaintiff made, cancelled, and did not reschedule a counseling appointment. N.Y. Ex. Y. Plaintiff argues that he could not attend the appointment because he was required to report to probation on the same day. Pl. Aff. ¶ 169. However, the record reflects that plaintiff's required attendance at FEGS during his probation was sporadic at best. Defendants also had probable cause to believe that plaintiff was not paying his court-ordered fees. Plaintiff concedes that he was "behind in his payments" Pl. Aff. ¶ 53, and that his

payments were "[o]n and off." Pl. Dep. at 200. Therefore, defendants had probable cause to

charge plaintiff with failure to attend counseling and pay court-ordered fees.

### d. The Proceeding was Instituted with Malice

Even if plaintiff established that defendants lacked probable cause for any of the VOPs

brought against him, plaintiff has not demonstrated that defendants acted with malice. The fourth

prong of a malicious prosecution claim requires plaintiff to demonstrate "that the criminal

prosecution was commenced or continued against him with malice, *i.e.*, with a wrong or

improper motive, something other than a desire to see the ends of justice served." Fulton v.

Robinson, 289 F.3d 188, 198 (2d Cir. 2002) (internal quotations and citations omitted).[9] "In

most cases, the lack of probable cause - while not dispositive - tends to show that the accuser did

not believe in the guilt of the accused, and malice may be inferred from the lack of probable

cause." Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (citation omitted).

However, "while the absence of probable cause may bear on the malice issue, the two remain

independent elements of a malicious prosecution action." Sulkowska v. City of New York, 129

F.Supp. 2d 274, 295 (S.D.N.Y. 2001). "There must be a showing of some deliberate act

punctuated with awareness of conscious falsity to establish malice." Landon, 2009 WL 2191335,

at * 9 (citing Korthas v. City of Auburn, No. 5:04-CV-537, 2006 WL 1650709, at *5 (N.D.N.Y.

June 9, 2006)).

---

[9] The Court assumes, *ad arguendo*, that plaintiff has established the fifth prong of his malicious prosecution claim, the existence of a post-arraignment deprivation of liberty rising to the level of a Fourth Amendment violation. See Rose v. Bethel, No. 03 Civ. 1241, 2007 WL 2476389, at *15 (S.D.N.Y. Aug, 29, 2007) ("[c]onditions of pretrial release that limit travel or require repeated court appearances can also constitute seizures within the meaning of the Fourth Amendment and are sufficient deprivations of freedom to sustain a Section 1983 malicious prosecution claim.").

Here, plaintiff presents no evidence from which a reasonable jury could conclude that defendants acted with malice. Plaintiff did not comply with the conditions of his probation, and defendants recommended or filed VOPs against him. Although the July 19, 2000 and March 12, 2001 VOPs included what may have been questionable charges, defendants immediately withdrew those charges. Plaintiff's conclusory use of the word "malicious" to describe defendants' actions is insufficient to withstand summary judgment. Therefore, defendants' motions should be granted and plaintiff's malicious prosecution claims should be dismissed.

## III.    Retaliation

Plaintiff alleges that defendants engaged in numerous retaliatory acts. See, e.g., Am. Compl. ¶ 59. He claims that defendants retaliated against him for refusing to attend sex offender counseling, Id. ¶¶ 16, 39, 113; for speaking out against his probation, Id. ¶ 30; Pl. Dep. at 181-92; and for filing this lawsuit. Pl. Memo at 18.

"To establish a *prima facie* case of First Amendment retaliation, a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (citing Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002)). The plaintiff bears the initial burden of showing that his conduct was constitutionally protected, and that this conduct was a substantial or motivating factor for defendants' adverse action. Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

The Second Circuit has noted that claims by inmates are prone to abuse as prisoners can claim retaliation for any decision they dislike, Gonzalez v. Narcato, 363 F.Supp. 2d 486, 495

(E.D.N.Y. 2005), and that Courts must approach such claims "with skepticism and particular care." Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), abrogated on other grounds; see also Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (recognizing "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated"). In McCloud v. Kane, 491 F.Supp. 2d 312, 317 (E.D.N.Y. 2007), the Court stated that this skepticism and particular care likewise applies to retaliation claims by parolees. Like incarceration and parole, probation carries similar restrictions and adversities. See Gall v. U.S., 552 U.S. 38, 128 S.Ct. 586, 595-96 (2007) ("inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled") (citing Griffin v. Wisconsin, 483 U.S. 868, 874 (1987)). Therefore, the Court approaches plaintiff's instant retaliation claims with particular care.

### a. Constitutionally Protected Activity

Plaintiff alleges that defendants retaliated against him for refusing to attend sex offender counseling, speaking out against the conditions of his probation, and filing this lawsuit. For the purposes of this Report, the Court assumes, *ad arguendo*, that plaintiff's refusal to attend sex offender counseling was constitutionally protected conduct. The Court also finds that speaking out against the conditions of his probation and filing the instant lawsuit are constitutionally protected activities. See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) ("[t]he right to petition government for redress of grievances-in both judicial *and* administrative forums-is among the most precious of the liberties safeguarded by the Bill of Rights") (citing Franco v. Kelly, 854 F.2d 584 (2d Cir. 1988)); see also McCloud, 491 F.Supp. 2d at 318 (complaining about conduct of parole officer is a constitutionally protected activity). However, plaintiff fails to demonstrate that defendants took an adverse action against him and that there was a causal

connection between the protected speech and the adverse action. Therefore, defendants' motions should be granted and plaintiff's retaliation claims should be dismissed.

### b. Adverse Action

Plaintiff alleges that defendants retaliated against him by filing VOPs against him, ordering psychological examinations, engaging in extortion, submitting false reports (i.e. the Letter of Termination), ordering him to report on holidays, refusing to provide a proceeding for a waiver of probationary fees, and harassing him verbally. See Am. Compl. ¶ 59. However, not every response to a probationer's exercise of a constitutional right gives rise to a retaliation claim. See Dawes, 239 F.3d at 492-93.

> Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection. This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse.

Id. at 493 (internal citations and quotations omitted). Here, the Court assumes that the filing of a VOP constitutes an adverse action; however, plaintiff's remaining allegations are factually and legally insufficient to survive defendants' motions for summary judgment.

Plaintiff alleges that defendants ordered psychological examinations without just cause. He states that "Okora criminally altered the sentencing Court's Judgment of Conviction by handwriting . . . that a special condition to the plaintiff's probation was to attend court ordered counseling." Pl. Aff. ¶ 8. However, this Court previously found that "the [New Jersey] court provides probation with some discretion to order counseling even though it may not have been

ordered in the specific sentencing order." Document 64 at 7. Therefore, it was within defendants' discretion to order psychological examinations, and Okora did not retaliate against plaintiff or commit a "criminal" act by listing "mental health counseling" as a condition of plaintiff's probation.

It is less clear whether ordering plaintiff to attend sex offender counseling could constitute an adverse action since plaintiff was never convicted of a sex offense and Judge Kenny never ordered him to attend sex offender counseling. While plaintiff attended sex offender counseling for a single, forty-five minute session, this brief session could have had potentially stigmatizing consequences which would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." See Coleman v. Dretke, 395 F.3d 216 (discussing the stigmatizing consequences of sex offender treatment). Nonetheless, because the Court finds that the law regarding required sex offender counseling was not clearly established (see supra discussion section I(b)), defendants are entitled to qualified immunity on this claim.

Plaintiff claims that Ford and Goldman engaged in extortion by ordering him to attend and pay for sex offender counseling, and that Ford retaliated against him by preparing the Letter of Termination. Pl. Memo at 22. However, plaintiff signed a contract with Mustard Seed agreeing to counseling as well as to pay the fees, Ford Ex. G, and plaintiff admits that he never paid the fee. Pl. Dep. at 249. Additionally, there was nothing retaliatory about the Letter of Termination since Ford sent the letter only to Goldman pursuant to an authorized release. Ford Ex. G. The letter informed Goldman that plaintiff would not pay for counseling and that counseling was terminated. Ford Dec. ¶¶ 4-6.

Plaintiff claims that the New Jersey defendants retaliated against him by scheduling appointments on religious and national holidays and on Mondays. Nonetheless, reporting to probation was a condition of plaintiff's release, and the Court agrees with defendants that "[s]cheduling appointments on Mondays, scheduling an appointment on one occasion on a holiday, and refusing to re-schedule an appointment on another day when Plaintiff wanted to attend a religious service, does not rise to the level of a constitutional violation and does not constitute unlawful retaliation." N.J. Memo at 11.

Plaintiff alleges that the New Jersey defendants "refused to provide [him] with a proper proceeding for a waiver of indigency" and that "defendants continued to demand said fees from plaintiff, well aware and with knowledge that plaintiff was indigent and was entitled to said waiver." Am. Compl. ¶¶ 13-15. However, the record does not support this claim since plaintiff admits that a hearing on his motion for a waiver of fees was scheduled, and that the motion was dismissed after he failed to appear at the hearing. Pl. Dep. at 202.

Finally, plaintiff alleges that defendants verbally harassed him. He recounts Ford yelling, "everybody pays, that I'll pay, that he would tell Mr. Goldman that I refused to go and I'll be violated." Id. at 248. Plaintiff submits the affidavit of his friend, LuAnn Kubler, who states that she witnessed Ford yelling "pay or go to jail." Kubler Aff. ¶ 11. Plaintiff also alleges that Goldman advised him to "pay the money to defendant Ford or he would have plaintiff's civil rights violated." Am. Compl. ¶ 26. Plaintiff states that he reported these incidents to Okoro, and that Okoro called him a "trouble maker" and stated that he would "teach the plaintiff a lesson." Id. ¶ 29. Plaintiff also claims that Santiago laughed at him because he could not find a dog sitter for his epileptic dog. Pl. Dep. at 191. However, "42 U.S.C. § 1983 was not designed to rectify harassment or verbal abuse." Smith v. Christopher, 9:06-CV-1196, 2008 WL 4283519, at * 12

23

(N.D.N.Y. Sept. 16, 2008); see also Bartley v. Collins, No. 95 Civ. 10161, 2006 WL 1289256, at * 6 (S.D.N.Y. May 10, 2006) (collecting cases). These statements attributed to defendants are insufficient to sustain plaintiff's constitutional claims.

### c. Causal Connection

Even if plaintiff established that defendants' actions were adverse, his retaliation claims would still fail as he has not established facts supporting an inference of a causal connection between the adverse action and the protected conduct. Baskerville v. Blot, 224 F.Supp. 2d 723, 732 (S.D.N.Y. 2002); see also Crenshaw v. Herbert, 445 F.Supp. 2d 301, 305 (W.D.N.Y. 2006) (*post hoc, ergo propter hoc* reasoning, literally, "after this, therefore because of this", is insufficient to demonstrate retaliation). A casual connection between the adverse action and the protected conduct requires specific proof of improper motivation. Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). "[H]owever, a defendant may be entitled to summary judgment if he can show dual motivation, *i.e.*, that even without the improper motivation the alleged retaliatory action would have occurred." Scott, 344 F.3d at 287-88 (citing Mt. Healthy, 429 U.S. at 287); see also Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (plaintiff bears the burden of demonstrating that the protected conduct is "a substantial or motivating factor for the adverse actions taken by prison officials."). Courts may consider a number of factors in determining whether a causal connection exists between the alleged adverse action and the protected conduct: (1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the plaintiff's disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation. See Colon, 58 F.3d at 872-73.

Here, plaintiff fails to demonstrate that defendants retaliated against him by requiring him to attend sex offender counseling. The record reflects that Goldman referred plaintiff to Mustard Seed *before* plaintiff engaged in any alleged protected activity. See, e.g., Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) ("where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."). Further, Goldman explains that he directed plaintiff to Mustard Seed based on "the presentence report, the conviction of endangering the welfare of a child and the complaint information." Goldman Dep. at 16. Plaintiff fails to demonstrate that Goldman's decision to refer him to Mustard Seed was causally connected to any constitutionally protected conduct. Therefore, plaintiff's retaliation claim should be dismissed.

Plaintiff also fails to demonstrate that defendants charged him with VOPs because he engaged in constitutionally protected conduct. See Bartley, 2006 WL 1289256, at *8 ("[t]o show a causal connection between his protected act and the adverse action, a plaintiff must make more than merely conclusory allegations."). The record evidence reflects that the VOPs were based on plaintiff's noncompliance with the conditions of his probation, and plaintiff presents no evidence that defendants filed VOP charges against him for retaliatory purposes. Accordingly, defendants' motions should be granted and plaintiff's retaliation claims should be dismissed.

## IV.    Supervisory Liability

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir.

1991)). While there is no *respondeat superior* liability under § 1983, <u>Richardson v. Goord</u>, 347 F.3d 431, 435 (2d Cir. 2003), a supervisor may be held liable if it is established that he (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated. <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995).

Here, plaintiff alleges that defendants were "negligent in failing to provide competent and sufficient supervisory personnel to monitor the actions of probation officers, judges, public defenders, licensed therapist and/or psychologist and in failing to protect and secure the plaintiff from the actions and conduct of the defendants." Am. Compl. ¶ 71. He claims that Casale, Stanecki, and Walsh were negligent because they allowed him to be sent to mental health counseling without a proper evaluation and to have VOPs filed against him. Pl. Dep. at 194-96, 223-24. Plaintiff asserts that defendants knew that the January 9, 2003 VOP was unlawful because he sent them medical records that there was "nothing wrong" with him. <u>Id.</u> at 223-24; <u>see also</u> Pl. Ex. 47, 48. With respect to Sylvia Way, plaintiff testified:

**A:** As a supervisor capacity I brought it to her attention, she refused to do anything.

**Q:** What did you bring to her attention?

**A:** The conduct of Mr. Bethel and the therapy, I tried to reach out to her as a supervisor saying listen, I'm not arguing therapy, that's not the gist. If I need to go to therapy I'll comply but tell me what for and it's certainly not going to be for a sexual deviant counseling.

**Q:** I see, okay. Anything else?

**A:** Not that I can recall.

Pl. Dep. at 126. Lastly, plaintiff alleges that he complained to Walsh about an anti-Semitic remark made by Okoro. Id. at 196-97.

However, plaintiff fails to demonstrate that Casale, Stanecki, or Walsh were personally involved in any violation of his constitutional rights. Additionally, plaintiff's allegation that he "reached out" to Way and that she "refused to do anything" is insufficient to withstand defendant's motion for summary judgment. With respect to plaintiff's grievances to Walsh about Okoro's anti-Semitic comments, the record reflects that this matter was referred to Casale for an investigation, and that Casale found "no evidence of inappropriate behavior." N.J. Ex. T. Therefore, plaintiff fails to demonstrate that Casale, Stanecki, Walsh or Way were personally involved in any violation of his constitutional rights. These defendants' motions should be granted and plaintiff's claims against these supervisors should be dismissed.

## V.   Malpractice Claim Against Ford

Plaintiff alleges that Ford committed malpractice by "grossly and negligently failing to properly diagnose, observe, treat and/or administer proper care to the plaintiff." See Am. Compl. ¶ 116. "Malpractice is professional negligence." JR v. DC, Psychotherapist, 12 Misc.3d 1173(A), 2006 WL 1759457, at *2 (N.Y. Sup. Ct. June 14, 2006). "The elements of a *prima facie* malpractice cause of action are: [1] a deviation or departure from accepted practice within the profession and within the relevant professional community; and [2] evidence that such departure was a proximate cause of injury or damage." Id. Expert testimony is required to establish breach of a standard of professional care where the ordinary experience of the fact finder does not provide a sufficient basis for judging the adequacy of the professional services. S & D Petroleum Co., Inc. v. Tamsett, 144 A.D.2d 849, 850 (3d Dep't 1988).

Here, no reasonable jury could conclude that Ford committed malpractice. Plaintiff was referred to Mustard Seed and briefly met with Ford. At the consultation, plaintiff agreed to be treated "for sexually abusive behavior" and permitted Mustard Seed to communicate with his probation officers. See Ford Ex. G. However, since plaintiff stated that he could not pay for Mustard Seed's services, Ford sent Goldman a letter terminating the counseling. According to Joan Beder, LCSW, DSW, "[a]ll aspects of contact with Mr. Rose and Mustard Seed Counseling Services are consistent with standard social work procedure(s) and are consistent with the National Association of Social Workers Code of Ethics." Ford Ex. I.

In an attempt to revive his libel claim, which has been dismissed, plaintiff alleges that Ford's preparation of the Letter of Termination constituted malpractice. Plaintiff submits a letter from Quentin John Clough, a licensed clinical social worker who has treated plaintiff. Clough states that the Letter of Termination "mis-represents the facts of [plaintiff's] case" and "has impugned his character and any reasonable person reading this letter will likely fall under the false assumption that Mr. Rose is [a] convicted sexual offender." Document 159. However, plaintiff's libel claim has been dismissed as untimely. Plaintiff submits no evidence to establish the elements of malpractice. Therefore, Ford's motion for summary judgment should be granted and plaintiff's malpractice claim should be dismissed.

## VI.    Bellevue Report

Plaintiff alleges that "defendants refused to provide [him], his attorney or therapist, with copies of any supporting medical documentation verifying that [he] was and/or is in need of any treatment of any nature." Am. Compl. ¶ 22. In his deposition, plaintiff states that Goldman refused to provide him with the report prepared by Dr. Schneider ("Bellevue Report"). Pl. Dep.

at 180. Even assuming that Goldman, or any other defendant for that matter, failed to provide plaintiff with the Bellevue Report, plaintiff fails to establish a violation of federal law under § 1983. Access to probation case records is governed by state law. See 9 NYCRR § 348; Collins v. City of New York, No. 05-CV-5595, 2007 WL 2455142, at *5 (E.D.N.Y. Aug. 23, 2007) (it is well settled that violations of state law are not cognizable under § 1983). Moreover, plaintiff does not establish that Goldman was mandated to provide him with the Bellevue Report pursuant to 9 NYCRR § 348.4. Accordingly, defendant's motion for summary judgment on this claim should be granted.

## VII.   Equal Protection

Plaintiff alleges that defendants violated his Equal Protection rights under the Fourteenth Amendment. The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal citations omitted). "[A] plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005). Here, plaintiff alleges that "I feel that I was treated *indifferently*, I think that if I was going to get statistics of people who go and report to probation who are in a similar situation, they were treated differently." Pl. Dep. at 180-81 (emphasis added). However, plaintiff's feeling that he was treated "indifferently" is insufficient to state a claim under the Fourteenth Amendment. Therefore, defendants' motions should be granted and plaintiff's equal protection claim should be dismissed.

## VIII.    Municipal Liability

In order to establish municipal liability under §1983, a plaintiff must demonstrate an officially adopted policy, custom or practice caused the deprivation of his or her constitutional rights. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). Plaintiff was asked during his deposition:

> **Q:** What, if anything, is the basis for your claim against the City of New York?
>
> **A:** As their employers.
>
> **Q:** Anything else?
>
> **A:** Paying to supervise, etc., etc.
>
> **Q:** When you say etc., etc. I need you to tell me.
>
> **A:** Hiring inept, incompetent individuals, unqualified individuals - - that's something that could be done in the Bill of Particulars.
>
> **Q:** Apart from those general boiler plate items, anything else?
>
> **A:** Not that I can recall offhand.

Pl. Dep. at 127. Plaintiff's claims against the City of New York are wholly conclusory. He fails to demonstrate that any officially adopted policy, custom or practice caused the deprivation of his constitutional rights. Therefore, defendant's motion should be granted and plaintiff's claims against the City of New York should be dismissed.

## IX.    Eleventh Amendment Sovereign Immunity

Plaintiff names the State of New Jersey as a defendant. However, under the Eleventh Amendment, states and their agencies are protected by sovereign immunity. See Pennhurst State

Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 (1984). The Eleventh Amendment bars suits

for damages against states, state agencies, and state officials acting in their official capacity,

absent the state's consent to suit or an express or statutory waiver of immunity. Bd. of Trs. of

Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001). "[N]either a State nor its officials acting in

their official capacities are 'persons' under [42 U.S.C.] §1983." Huminski v. Corsones, 396 F.3d

53, 70 (2d Cir. 2005) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)).

Accordingly, defendant's motion should be granted and plaintiff's claims against the State of

New Jersey should be dismissed.

## X.    42 U.S.C. §§ 1985, 1986, 1987, 1988 and 14141, and Excessive Force

Plaintiff's amended complaint alleges that defendants violated his rights under 42 U.S.C.

§§ 1985, 1986, 1987, 1988 and 14141. However, the Court previously dismissed with prejudice

plaintiff's §§ 1985 and 1986 claims against Ford, Document 90, and granted plaintiff's motion to

amend his complaint for the sole purpose of adding a malpractice claim against Ford. Plaintiff's

efforts to renew his conspiracy claim and add additional claims should be denied and these

claims should be dismissed.[10]

Plaintiff's amended complaint also alleges excessive force. However, during his

deposition, defendants asked plaintiff about his excessive force claim, and plaintiff responded,

"[t]here was no excessive abuse. I'll withdraw that." Pl. Dep. at 194. Therefore, defendants'

motions should be granted and plaintiff's excessive force claim should be dismissed.

---

[10]  To the extent that plaintiff asserts a conspiracy claim against the remaining defendants, there is no basis for this claim and it should be dismissed.

## CONCLUSION

Accordingly, it is respectfully recommended that defendants' motions for summary judgment should be granted and plaintiff's amended complaint should be dismissed.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated: December 9, 2009
      Brooklyn, New York