UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

WAYNE ROSE,

                Plaintiff,

    -against-

ROBERT GOLDMAN, WILLIAM FORD, JUDE
OKORA, COLLEEN WALSH, EVELYN
SANTIAGO, CHRISTOPHER STANECKI,
ANTHONY CASALE, JR., CHRISTOPHER
KAZLAU, WILLIAM FORD, DAVID BETHEL,
SYLVIA WAY, THE CITY OF NEW YORK, and
THE STATE OF NEW JERSEY,

                Defendants.

-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**02-CV-5370 (NGG) (LB)**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 2 4 2011 ★

BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

       Plaintiff Wayne Rose ("Rose"), pro se, brings this action against Defendants under

42 U.S.C. §§ 1983, 1985, 1986, 1987, 1988, and 14141, and the First, Fourth, and Fourteenth

Amendments to the United States Constitution. (Am. Compl. (Docket Entry # 104).)

Defendants separately move for summary judgment against Rose. (N.J. Mot. (Docket Entry

# 150); N.Y.C. Mot. (Docket Entry # 152); Ford Mot. (Docket Entry # 155).) On March 6, 2009,

the court referred these motions for summary judgment to Magistrate Judge Lois Bloom for

report and recommendation. (Docket Entry # 184.) On December 9, 2009, Judge Bloom issued

a Report and Recommendation ("R&R") recommending that the court grant Defendants'

motions. (R&R (Docket Entry # 189).) Rose now objects to Judge Bloom's R&R. (Pl.'s Obj.

(Docket Entry # 193).) As set forth below, the court grants Defendants' motions for summary

judgment in their entirety.

## I. STANDARD OF REVIEW

In reviewing the report and recommendation of a dispositive matter from a magistrate judge, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). The district court reviews de novo "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). Where a plaintiff proceeds pro se, the court reads his submissions liberally and interprets them as raising the strongest arguments they suggest. See McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Even when reviewing pro se objections, a district court may adopt the recommendation of a magistrate judge for alternative reasons not set forth in the magistrate's report. See id. ("A judge of the court *may* accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.") (emphasis added); see also Johnson v. Rock, No. 08-cv-1013 (GLS) (RFT), 2010 WL 3910153, at *1 (N.D.N.Y. Sept. 30, 2010) (adopting magistrate's recommendation of dismissal of a pro se complaint for reasons other than those set out in the report).

## II. BACKGROUND

### A. Rose's Amended Complaint

Rose's Amended Complaint centers around several incidents concerning Defendants' involvement in supervising Rose's probation in New Jersey and New York for his March 2, 1999 conviction of child abuse in New Jersey Superior Court. (See Am. Compl.; N.Y. Mot. Ex. J.) Rose brings his claims against three groups of Defendants: (1) the State of New Jersey and New Jersey Probation Officers Anthony Casale, Jr. ("Casale"), Christopher Stanecki ("Stanecki"), Colleen Walsh ("Walsh"), Jude Okoro ("Okoro"), and Evelyn Santiago ("Santiago"), and New Jersey Public Defender Christopher Kazlau ("Kazlau") (collectively, "the New Jersey

2

Defendants"); (2) the City of New York and New York City Probation Officers Robert Goldman ("Goldman"), David Bethel ("Bethel"), and Sylvia Way ("Way") (collectively, the "New York Defendants"); and (3) William Ford ("Ford"), a social worker and therapist employed by Mustard Seed Forensic Social Work Services, P.C. ("Mustard Seed"), with whom Rose engaged in one, forty-five minute session of sex counseling. (See Am. Compl.) Rose's probation was initially supervised in New Jersey. Shortly after his conviction, however, Rose moved from New Jersey to New York. As a consequence, the New York City Department of Probation began to supervise Rose's probation. (See N.Y. Mot. Ex. Q.)

Rose's allegations focus on four events. First, Rose alleges that following his 1999 conviction, Goldman wrongly required Rose to attend a sex counseling session with Ford at Mustard Seed as part of his court ordered probation, even though his judgment of conviction did not specify that he needed mental health or sex counseling. (See Am. Compl. ¶ 23; N.Y. Mot. Ex. J; N.J. Mot. Ex. Q.) Second, Rose alleges that on June 19, 2000, Goldman wrongly informed Okoro that Rose had vacated his apartment without notifying Goldman, thus violating his probation. (See Am. Compl. ¶ 27.) Okoro then filed "violation of probation" ("VOP") proceedings against Rose ("VOP 1"). (See N.Y. Mot. Ex. U.) Third, Rose alleges that on March 12, 2001, Okoro wrongly filed a second VOP against Rose ("VOP 2") because Rose failed to pay court fees and attend counseling, as required under the terms of his probation. (See Am. Compl. ¶ 30; N.Y. Mot. Ex. W.) And fourth, Rose alleges that on November 19, 2002, Bethel wrongly informed Santiago that Rose had failed to complete his mental health counseling, which led to the institution of a VOP against him ("VOP 3"). (See Am. Compl. ¶ 50; N.Y. Mot. Ex. Y.)

3

Rose claims that Defendants' supervision of his probation from 1999 until its termination in 2003 violated 42 U.S.C. §§ 1983, 1984, 1985, 1986, 1987, 1988, and 14141, and Rose's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. (See Am. Compl.) Rose also brings a malpractice claim against Ford. (Id.)

## B.    Procedural History

The procedural history in this case is complicated because Rose filed three contemporaneous actions based on the same facts in this court, the Southern District of New York, and the District of New Jersey. Rose filed his first action—this action—on October 4, 2002, against all of the same Defendants, except the City of New York, and against New Jersey Superior Court Judges Camille Kenny, Arthur D'Italia, and L. DeBello, and the State of New York. (Compl. (Docket Entry # 1).) On February 25, 2003, Rose filed a complaint in the Southern District of New York against the New York Defendants, except for Robert Goldman, and against Evelyn Santiago and Colleen Walsh, based on the same allegations contained in his Eastern District Complaint. (Compl., Rose v. Bethel, No. 03-cv-1241 (GBD) (HBP) (S.D.N.Y. Feb. 25, 2003) (Docket Entry # 1).) On April 16, 2003, Rose filed his third complaint on the same issues, this time in the District of New Jersey, against various defendants, including Evelyn Santiago. (Compl., Rose v. Schultz, No. 03-cv-1684 (DMC) (MF) (D.N.J. Apr. 16, 2003) (Docket Entry # 1).)

On March 12, 2004, this court issued a Memorandum and Order dismissing Rose's claims against the New Jersey Superior Court Judge Defendants, on the basis of absolute immunity, and against the remainder of the New Jersey Defendants in their official capacities on Eleventh Amendment grounds. ("E.D.N.Y. I" (Docket Entry # 50) at 7-8, 23-24.) The decision also allowed Rose sixty days to amend his Complaint. (Id. at 24.) On September 20, 2004, following a motion to reconsider by the New Jersey Defendants, the court further concluded that

4

the New Jersey Defendants were entitled to absolute prosecutorial immunity for initiating VOPs against Rose. ("E.D.N.Y. II" (Docket Entry # 64) at 5-6.)

On June 2, 2005, after several extensions of time, Rose filed an Amended Complaint in this action, now the operative complaint. (Am. Compl.) In his Amended Complaint, Rose removed the New Jersey Superior Court Judges and the State of New York as Defendants and added the City of New York as a Defendant. (Id.) On September 26, 2006, following discovery, all Defendants filed motions for summary judgment against Rose. (N.J. Mot.; N.Y.C. Mot.; Ford Mot.)

On April 17, 2007, pending the disposition of Defendants' motions for summary judgment in this court, the District of New Jersey issued an opinion dismissing Rose's complaint. Rose v. Schultz ("D.N.J."), No. 03-cv-1684 (DMC), 2007 WL 1160348, at *1 (D.N.J. Apr. 17, 2007). The decision barred all of Rose's claims against Santiago on the basis of claim and issue preclusion, resulting from this court's September 20, 2004 decision, E.D.N.Y. II. Id. at *3-6. The decision also barred Rose's claims against the State of New Jersey on Eleventh Amendment grounds. Id. at *8-9. Rose did not appeal.

On August 29, 2007, the Southern District of New York issued an opinion adopting the report and recommendation of Magistrate Judge Henry B. Pitman recommending that the district court grant summary judgment in favor of Evelyn Santiago and Colleen Walsh, also on the basis of claim and issue preclusion following this court's decisions. Rose v. Bethel ("S.D.N.Y. I"), No. 03-cv-1241 (GBD) (MHD), 2007 WL 2476389, at *1 (S.D.N.Y. Aug. 29, 2007).

On February 27, 2008, the Southern District issued a decision adopting in part additional findings and conclusions of Magistrate Judge Pitman. Rose v. Bethel ("S.D.N.Y. II"), No. 03-cv-1241 (GBD) (MHD), 2008 WL 563455, at *1 (S.D.N.Y. Feb. 27, 2008). There, the Southern

5

District granted summary judgment for all of the defendants on all of Rose's federal claims that centered on the defendants' institution of VOP proceedings against Rose. Id. The Southern District also granted summary judgment in favor of all of the defendants on Rose's retaliation and discrimination claims. Id. at *2. The court referred Rose's malicious prosecution claims back to Magistrate Judge Pitman. Id. at *3.

On March 6, 2009, this court referred Defendants' still outstanding motions to dismiss to Magistrate Judge Lois Bloom for report and recommendation. (Docket Entry # 184.) On December 9, 2009, Judge Bloom issued an R&R recommending that the court grant Defendants' motions for summary judgment and dismiss Rose's Amended Complaint. (R&R.)

On February 22, 2010, in the Southern District action, the court reviewed Magistrate Judge Pitman's report and recommendation concerning Rose's malicious prosecution claims. Rose v. Bethel ("S.D.N.Y. III"), No. 03-CV-1241 (GBD) (MHD), 2010 WL 727149, at *1 (S.D.N.Y. Feb. 22, 2010). The court adopted the magistrate judge's recommendation that Rose's malicious prosecution claims should be dismissed, granted summary judgment in favor of Bethel, Way, and the City of New York, and dismissed Rose's action. Id. at *2.

## III.  DISCUSSION

Rose submits a rambling, ten-page, slumgullion of objections to Judge Bloom's R&R. (Pl.'s Obj.) Construing Rose's objections liberally, as we must—and avoiding the knotty task of attempting to parse them individually—the court takes the Gordian approach by considering Rose's objections as contesting every part of Judge Bloom's R&R. Accordingly, the court reviews Judge Bloom's R&R de novo. 28 U.S.C. § 636(b)(1). On review, the court concludes that res judicata bars many of Rose's claims against Defendants, and grants summary judgment in favor of Defendants on the remainder.

**A. Res Judicata: Claim Preclusion and Issue Preclusion**

    1. <u>Legal Standards</u>

Res judicata comes in two basic flavors: claim preclusion and issue preclusion. <u>Taylor v.</u>

<u>Sturgell</u>, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim

preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). Claim

preclusion forecloses "successive litigation of the very same claim, whether or not relitigation of

the claim raises the same issues as the earlier suit." <u>Id.</u> (citation omitted). In other words, "the

doctrine of claim preclusion . . . precludes the parties or their privies from relitigating issues that

were *or could have been raised* in that action." <u>Rivets v. Regions Bank of La.</u>, 522 U.S. 470,

476 (1998) (internal punctuation omitted) (emphasis added). "Issue preclusion, in contrast, bars

successive litigation of an issue of fact or law actually litigated and resolved in a valid court

determination essential to the prior judgment . . . ." <u>Taylor</u>, 553 U.S. at 892 (citation omitted).

    a. Claim Preclusion

In the Second Circuit, claim preclusion exists where there was "(1) a final judgment on

the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or

their privies, and (4) involving the same cause of action." <u>EDP Med. Computer Sys., Inc. v.</u>

<u>United States</u>, 480 F.3d 621, 624 (2d Cir. 2007). This four prong test is explicated below.

    i. A Final Judgment on the Merits

For the purpose of claim preclusion, a "final judgment on the merits" "actually passes

directly on the substance of a particular claim before the court." <u>Semtek Int'l, Inc. v. Lockheed</u>

<u>Martin Corp.</u>, 531 U.S. 497, 501-02 (2001) (internal punctuation omitted). "To be on the merits

the judgment must have been based upon legal rights as distinguished from mere matters of

practice, procedure, jurisdiction, or form." <u>McKinnon v. City of Berwyn</u>, 952 F.2d 1398 (Table),

at *2 (7th Cir. 1992) (internal quotation marks omitted).

### ii. A Court of Competent Jurisdiction

A court of competent jurisdiction is that judicial body that has the legal authority to award the relief sought by the plaintiff. See Sheffield v. Sheriff of Rockland Cnty. Sheriff Dep't, 393 F. App'x 808, 813 (2d Cir. 2010).

### iii. A Case Involving the Same Parties or Their Privies

Where the defendants seek to preclude the plaintiff from litigating his claim on res judicata grounds, "claim preclusion bars a subsequent action—involving either the same plaintiffs or parties in privity with those plaintiffs—from asserting [those] claims." Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 918 (2d Cir. 2010).

### iv. Involving the Same Cause of Action

Whether a claim involves "the same cause of action" as a previously litigated claim turns on "whether the two proceedings in question concern the same transaction or series of transactions, whether the same evidence is needed to support both claims, and whether facts essential to the second proceeding were present in the first." Jones v. Dep't of Army Bd. for Corr. of Military Records, 77 F. App'x 39, 40 (2d Cir. 2003). Importantly, "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." Expert Elec., Inc. v. Levine, 554 F.2d 1227, 1234 (2d Cir. 1977). Two cases may be the "same cause of action" if it appears that the plaintiff is attempting to "relitigat[e] identical issues by merely 'switching adversaries.'" Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 329 (1979); see also O'Berry v. State Attorneys Office, 241 F. App'x 654, 660 (11th Cir. 2007) (upholding district court's dismissal on res judicata grounds for pro se plaintiff's second complaint alleging violations of 42 U.S.C. § 1983 after a final judgment on an earlier and substantially similar complaint where plaintiff's second complaint merely

added the City of Fort Lauderdale, an individual Assistant State Attorney, and individual police officers as defendants).

> b.      Issue Preclusion

A party is barred from raising a previously litigated issue under the doctrine of issue preclusion when

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

Purdy v. Zeldes, 337 F.3d 253, 258 (2d Cir. 2003) (citation omitted).

> 2.     *E.D.N.Y. II*: Claims Related to VOPs 1, 2, and 3 Against the New Jersey Defendants

In E.D.N.Y. II, this court concluded that the New Jersey probation officers were absolutely immune from claims related to the institution of VOP proceedings against Rose. (E.D.N.Y. II at 5-6 ("[W]ith respect to initiating the violation proceeding, the New Jersey probation officers' conduct in making the discretionary decision to prosecute the probation violation falls within the probation officers' absolute prosecutorial immunity.").) Rose's claims against the New Jersey probation officers—Casale, Stanecki, Walsh, Okoro, and Santiago—are therefore barred by issue preclusion under the framework described in Purdy. This identical issue of the New Jersey Defendants' absolute prosecutorial immunity was raised, litigated, and decided in E.D.N.Y. II. There, Rose had a full and fair opportunity to litigate the issue by submitting briefing on this very same point. (Docket Entry ## 25, 36, 37.) Finally, resolution of this issue was necessary to support the judgment in E.D.N.Y. II as to Rose's claims against the New Jersey probation officers. Rose may therefore no longer bring his claims against the New Jersey probation officers.

### 3. *D.N.J.*: Claims Against the State of New Jersey

The New Jersey Defendants have not argued that D.N.J. bars Rose's claims against them on res judicata grounds. (See N.J. Mem. (Docket Entry # 150-4).) Typically, "res judicata . . . and collateral estoppel . . . are affirmative defenses that must be pleaded by the defendant." Leather v. Eyck, 180 F.3d 420, 424 (2d Cir. 1999). But, "[t]he failure of a defendant to raise res judicata in answer does not deprive a court of the power to dismiss a claim on that ground," sua sponte. Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993); see also Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 398 n.4 (2d Cir. 2003). The court does so here.

In Rose's District of New Jersey action, Rose brought a Complaint against a number of defendants, including the State of New Jersey, concerning the events leading to VOPs 1, 2, and 3. See D.N.J., 2007 WL 1160348, at *1-3. In D.N.J., the court determined that the Eleventh Amendment barred Rose's claims against the state. Id. at *8-9. That decision was a final decision on the merits, issued by a court of competent jurisdiction, between the same parties, and arising from the same cause of action—the State's involvement in VOPs 1, 2, and 3—as the instant case. This court will not upset the District of New Jersey's decision. Claim preclusion now bars Rose's claims against the State of New Jersey.

### 4. *S.D.N.Y. II* and *III*: Claims Related to VOP 3 Against the New York Defendants

In S.D.N.Y. II, Judge Daniels adopted in part the report and recommendation of Magistrate Judge Pitman recommending summary judgment for Bethel, Way, and the City of New York on Rose's claims related to VOP 3, except for Rose's malicious prosecution claim. 2008 WL 563455, at *1-3. In S.D.N.Y. III, Judge Daniels adopted in full Magistrate Judge Pitman's recommendation that Rose's malicious prosecution claims against the same defendants should be similarly dismissed. 2010 WL 727149, at *1-2. Claim preclusion now estops Rose

from asserting his claims against the current New York Defendants for incidents surrounding VOP 3. Both S.D.N.Y. II and III were final decisions on the merits, issued by a court of competent jurisdiction, between the same parties, and arising from the same cause of action—the New York Defendants' involvement in VOP 3—as the instant case.

### B. Rose's Remaining Claims

After E.D.N.Y. II, D.N.J., and S.D.N.Y. II and III, the only surviving claims are Rose's claims related to VOP 1 against Goldman; Rose's malpractice and federal claims against Ford; and Rose's claim against Kazlau.

#### 1. Qualified Immunity

Goldman and Ford each argue that they are qualifiedly immune from Rose's claims. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense which is "an immunity from suit rather than a mere defense to liability . . . [and] is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted). Whether qualified immunity applies should be resolved at the earliest possible stage in litigation. See Hunter v. Bryant, 502 U.S. 224, 227 (1991). Qualified immunity "often can and should be decided on a motion for summary judgment." Castro v. United States, 34 F.3d 106, 112 (2d Cir. 1994).

A district court deciding a question of qualified immunity must appropriately define the constitutional right at issue. "The Supreme Court has instructed courts encountering a qualified immunity defense to claimed violations of constitutional rights to consider carefully 'the level of generality at which the relevant 'legal rule' is to be identified.'" Zahrey v. Coffey, 221 F.3d 342, 348 (2000) (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). If the right is construed

too generally, e.g., "the right to due process of law," qualified immunity would be meaningless; if the right is construed too narrowly, only specific acts that have been previously declared unconstitutional would entitle a plaintiff to sue. Id. The touchstone for the courts' analysis should be the "context" of the alleged violation: "a potentially recurring scenario that has similar legal and factual components." Arar v. Ashcroft, 585 F.3d 559, 572 (2d Cir. 2009).

After defining the constitutional right, the court faces two issues. One, "a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009) (internal citations omitted). And two, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 816. The court may decide either of these issues first. Id. at 822 (abrogating Saucier v. Katz, 533 U.S. 194 (2001)).

"In deciding whether a right was clearly established, we ask: (1) Was the law defined with reasonable clarity? (2) Had the Supreme Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have understood from the existing law that the conduct was unlawful?" Taravella v. Town of Wolcott, 599 F.3d 129, 140 (2d Cir. 2010) (quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998)). Like defining the constitutional right, the key to determining whether the right was clearly established is context. The question is not whether "the *very action* in question has previously been held unlawful but it is to say that *in light of the pre-existing law the unlawfulness must be apparent*." Id. at 140 n.5 (quoting Anderson, 483 U.S. at 640) (internal punctuation omitted). Therefore, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held

unlawful." Id. (quoting United States v. Lanier, 520 U.S. 259, 269 (1997)) (internal punctuation omitted).

c.    Claims Against Goldman

Rose alleges that Goldman violated his constitutional rights by requiring him to attend sex counseling with Ford; by reporting his discontinuance of treatment with Ford to Okoro in retaliation; and by failing to provide him with medical reports indicating that he needed counseling. Appropriately abstracted to encompass "a potentially recurring factual scenario that has similar legal and factual components," see Arar, 585 F.3d at 572, Rose's claims against Goldman can be construed as being predicated on: (1) a due process right to be punished only according to the terms of his conviction; (2) a due process right to refuse medical treatment, i.e., therapy with Ford; and (3) a due process right to access to medical records held by the State.

v. Due Process Right to Punishment According to the Terms of Probation

The court first considers whether Rose has made out a violation of a due process right to be punished only according to the terms of his probation. Pearson, 129 S. Ct. at 815-16. This claim, is based on the false assumption that the Superior Court of New Jersey did not order mental health counseling as part of Rose's probation, and that Goldman illegally modified Rose's conditions of probation. While it is true that Rose's judgment of conviction did not specify that he was required to undergo mental health counseling, the court has already determined, in E.D.N.Y. II, that Rose was

> required to undergo a mental health assessment as a special condition of his probation. Implicit in [the mental health assessment order] is some discretionary authority that probation should require [Rose] to receive further mental health counseling in the event that the assessment indicated that it was appropriate. [In addition], the State of New Jersey "Standard Conditions of Adult Probation" form states that probationers shall cooperate in any medical and/or psychological examinations, tests and/or counseling [the probationer's] probation officer recommends.

13

(E.D.N.Y. II at 6-7.) Goldman, therefore, did not modify Rose's terms of probation. To the contrary, it appears that Goldman directed Rose to follow the terms of his probation despite the absence of such a requirement on the face of the judgment of conviction. While the Superior Court's failure to include these terms on the judgment of conviction may be sorely regrettable, Goldman's conduct in ordering Rose to receive counseling was not prohibited by law. Goldman, therefore, is qualifiedly immune from Rose's due process claim based on such conduct.

### vi. Due Process Right to Refuse to Attend Therapy

Rose alleges that Goldman violated his constitutional right to due process by requiring him to undergo medical treatment, i.e., his therapy session with Ford. While a prisoner or probationer may refuse medical treatment in some circumstances, this right is by no means clearly defined. Compare Washington v. Harper, 494 U.S. 210, 240 (1990) (due process right to refuse electroconvulsive therapy), Hernandez-Carrera v. Carlson, 547 F.3d 1237, 1254-55 (10th Cir. 2008) (due process right to refuse to participate in group therapy), Traylor v. Main, No. 07-cv-2751 (DMC), 2007 WL 2028044, at *3 (D.N.J. July 10, 2007) (collecting cases finding constitutional right to refuse to attend therapy); with Newman v. Beard, 617 F.3d 775, 780-81 (3d Cir. 2010) (finding no constitutional right to refuse to attend group therapy). Goldman, therefore, is qualifiedly immune from Rose's due process claim on this ground.

### vii. Due Process Rights to Obtain Medical Records

Rose alleges that Goldman refused to provide him with "medical documentation verifying that [Rose] was and/or is in need of any treatment of any nature" in violation of his constitutional right to due process. (See Am. Compl. ¶ 22.) Rose does not point to—nor can the court find—any federal law, constitutional or otherwise, violated by the alleged conduct. Here, too, Goldman is qualifiedly immune from Rose's due process claim related to his medical records.

### d. Claims Against Ford

Ford also argues that he is qualifiedly immune from Rose's claims. Generally, qualified immunity from federal claims is afforded only to state actors. <u>Richardson v. McKnight</u>, 521 U.S. 399, 403 (1997). In limited circumstances, however, private individuals may be qualifiedly immune from § 1983 claims if history reveals "a 'firmly rooted' tradition of immunity applicable to" that class of individuals. <u>Id.</u> at 404. Here, Ford does not dispute that he is not a state actor. (Ford. Mot. at 3.) Suffice it to say that there is not a "'firmly rooted' tradition of immunity applicable" to clinical social workers conducting therapy pursuant to probation orders. Therefore, Ford is not entitled to qualified immunity from Rose's claims.

### 2. Malpractice

Rose claims that Ford committed malpractice by "grossly and negligently failing to properly diagnose, observe, treat and/or administer proper care to [him]." (<u>See</u> Am. Compl. ¶ 116.) As a result, Rose alleges he felt "sever [sic] physical, mental and emotional pain and suffering." (<u>See id.</u> ¶ 115.) In New York, "[t]he essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury." <u>DiMitri v. Monsouri</u>, 754 N.Y.S.2d 674, 675 (2d Dep't 2003). Rose has submitted no evidence, whatsoever, that Ford's treatment of Rose—at a single, forty-five minute psychotherapy session—somehow deviated or departed from an accepted medical practice. The only evidence submitted by Rose that even remotely addresses this issue is a letter from Quentin John Clough, a licensed clinical social worker, who stated that Ford's letter discontinuing his treatment of Rose "has impugned [Rose's] character and any reasonable person reading this letter will likely fall under the false assumption that Mr. Rose is [a] convicted sexual offender." (Docket Entry # 159.) This has *nothing* to do with whether Ford violated an accepted

medical practice. Even given the deference afforded to Rose as a pro se litigant, Rose utterly fails to establish that Ford engaged in malpractice in any way.

### 3. Federal Claims Against Ford

In his Amended Complaint, Rose adds a number of federal claims against Ford, specifically claims under 42 U.S.C. §§ 1985, 1986, 1987, 1988, and 14141. In E.D.N.Y. I, however, the court dismissed Rose's §§ 1985 and 1986 claims against Ford, and only granted Rose leave to amend to add his malpractice claim against Ford. Rose's new federal claims fall outside of the court's Order in E.D.N.Y. I, and Rose may not now litigate these claims.

### 4. Claims Against Kazlau

Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve a defendant "within 120 days after the complaint is filed." If the plaintiff fails to do so, the court may "dismiss the action without prejudice against that defendant." Id. Nothing in the record indicates that Kazlau was properly served with either of Rose's Complaints. Rose submits a certified mail receipt signed by a "Byrone B," and admits that he "has not received the return receipt from . . . Kazlau." (Docket Entry # 7.) Because more—much more—than 120 days have passed since Rose filed either of his Complaints, and because Rose has failed to serve Kazlau, the court dismisses those claims against Kazlau without prejudice.

## IV.  CONCLUSION

Plaintiff's suit has now spanned two states, three judicial districts, and almost nine years of litigation.  Today, it finally comes to an end.  The court dismisses Plaintiff's claims against Kazlau without prejudice.  The court grants summary judgment in favor of all of the remaining Defendants.  The Clerk of Court is directed to close this case.

SO ORDERED.

s/Nicholas Garaufis

Dated: Brooklyn, New York
      March 22, 2011

NICHOLAS G. GARAUFIS
United States District Judge